UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEORGE WORRELL, et al., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 09-4443 |
| v. | : | |
| ELLIOTT & FRANTZ, et al., | : | OPINION |
| Defendants. | : | |

Presently before the Court are Defendant's Motions to Preclude Plaintiff's Expert, Paul Stephens [Dkt. No. 68], and to Bifurcate the trial [Dkt. No. 69]. The Court has considered the written submissions of the parties. In addition, the Court discussed the motions with the parties at a pre-trial conference on January 15, 2013. Oral argument on the motions was held on April 9, 2013. For the reasons that follow, as well as those set forth on the record on April 9, 2013, Defendant's Motion to Bifurcate is denied and Defendant's Motion to Preclude Plaintiff's Expert is granted in part.

**I. Background**

George Worrell was responsible for transporting a Hitachi EX450 LC-5 excavator, Winzinger No. 351 (the "excavator") from Voorhees, New Jersey to a job site in Pennsylvania on July 19, 2007. Ex. A, Compl.; Ex. B, Dep. of George Worrell, 8:11-13, 10:5-16; 14:9-24; 24:3-23; 30:4-32:5; 32:24-33:10. The parties agree that the excavator had been fitted with a "wet kit" or an auxiliary system subsequent to its original manufacture. The hoses on the wet kit were installed in a manner that caused them to protrude over the highest or tallest point of the boom arm of the excavator. The

resulting additional height caused by arcing of the hoses presented transportation concerns for Worrell.

For the most part, Worrell transported the excavator for four years without incident. Ex. B, Dep. of George Worrell 98:15-102:11. However, on one occasion he transported the excavator on New Jersey State Route 73 and the hoses on the unit rubbed the undercarriage of a bridge. Id. at 26:8-29:14. Worrell also had an incident with the excavator while transporting it in Philadelphia, where he failed to clear an eleven foot overpass. Id. at 25:1-26:3. For his July 19, 2007 transport of the excavator, Worrell was planning to travel on State Route 73 in New Jersey. Id. at 20:19-21:4. Given his previous incident on this road, Worrell felt that he had to secure the hydraulic hoses of the wet kit and he climbed the arm of the boom, which is not a walkable surface, to reach them. Id. at 8:11-13, 10:5-16; 14:9-24; 24:3-23; 30:4-32:5; 32:24-33:10. However, Worrell fell off of the boom arm and was injured. Ex. D, Dep. of Kenneth Cockerill.

Worrell agrees that he alone decided to attempt to tie down the hydraulic hoses and that no one from Winzinger instructed or required that he do so. Ex B., Dep. of George Worrell, 28:10-14. Worrell further agrees that, to his knowledge, he is the only person who secures the hoses or has had a problem transporting the excavator in question. Id. at 29:9-30:3, 44:19-45:1, see also, Ex D., Cockerill Dep. 43:23-44:2.

B. Worrell's Expert Report

Paul Stephens is Plaintiffs' expert. He was commissioned to examine the excavator involved in Worrell's injury. Ex. I, Stephens' Report. Stephens claims he compared his measurements of the excavator with the State of New Jersey's statutory clearance minimum and the clearance of the anticipated hauling routes and concluded that the height of the excavator, including the installed wet kit, rendered the machine

defective.  Id.  Stephens attributes the defect to the improperly installed wet kit, which not only caused regulatory height transportation violations, but also was "an integral part of the 'as manufactured' content of the machine."  Id. at 11.  "[T]he excavator, with an improperly installed wet kit that increased the excavator's transport height and potentially shortened wet kit hose life, had a manufacturing defect."  Id.

Stephens' report, by implicit and explicit means, validates Worrell's transportation clearance concerns.  Id. at 11-12.  It also identifies the theory underscoring Worrell's products liability claim as a manufacturing defect.  Defendant moves to preclude Mr. Stephens from testifying for the following reasons.  First, it states that Stephens' opinions lack support and make impermissible credibility determinations.  Second, it contends that Stephens did not use an acceptable methodology in forming his opinions and that the opinions are speculative and amount to conjecture.  Finally, Defendant contends that Stephens' bare conclusions constitute an impermissible net opinion.

Defendant also moves to bifurcate the trial, arguing prejudice and efficiency. Defendant contends liability is tenuous, with a strng likelihood that Defendant will be found not responsible for Mr. Worrell's injuries, saving the Court's time should a verdict exonerate Defendant. It appears from the record and the discussion with the parties that most of the testimony related to damages would not exceed two days time.  In addition, Plaintiff argues that Mr. Worrell's injuries need to be examined during the liability phase of the trial in order to assuage any credibility concerns.  Mr. Worrell, because of the nature of his head injury, may present his testimony in a manner that is inconsistent

with his prior statements and/or that gives the appearance that he is being evasive.[1] For these reasons, Plaintiff contends that Mr. Worrell's damages, and the impact of his injury on his life, need to be explored so that the jury does not unfairly impugn the authenticity of Mr. Worrell's statements.  For the reasons stated during the parties pretrial conference, as well as those stated on the record, Defendant's motion to bifurcate is denied.[2]

The Court will address the motion to Preclude Plaintiff's Expert, Paul Stephens.

## II. Standard

The guiding principles that inform the Court's judgment are found in Federal Rule of Evidence 702 and Daubert, 509 U.S. 579.  Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] Moreover, as further explored during oral argument, using prior testimony to refresh Mr. Worrell's recollection may not cure his inconsistent statements, because Mr. Worrell often cannot remember;  there is no memory or recollection to refresh.  Also, it would put Plaintiff's counsel in the awkward position of having to impeach Mr. Worrell. Such a circumstance is plausible when a witness attempts to elude prior accounts, which may not be the case for Mr. Worrell, a witness with documented memory issues.

[2] The Federal Rules of Civil Procedure provide that the Court may bifurcate trial proceedings "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b).  "The decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed decision by the trial judge in each instance." Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).  The court has "broad discretion" in determining whether to bifurcate proceedings. Idzojtic v. Pennsylvania Railroad Company, 456 F.2d 1228, 1230 (3d Cir. 1972).

Fed. R. Evid. 702.  Consistent with that Rule, Daubert established a "trilogy of restrictions" on the admissibility of expert testimony relating to scientific knowledge. See Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003).[3]  This "trilogy" consists of "qualification, reliability and fit."  Id.  The Third Circuit liberally construes the qualifications of an expert, noting that "a broad range of knowledge, skills, and training will qualify a witness as an expert . . . ."  See Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 495 (D.N.J. 2002) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) ("Paoli II")) (internal quotations omitted).  As such, exclusion of an expert witness is "improper simply because an expert does not have the most appropriate degree of training."  Yarchak, 208 F. Supp. 2d at 495 (quoting Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 372 (D.N.J. 1995)).

With respect to reliability, the focus is on the "principles and methodology, not on the conclusions that they generate."  Daubert, 509 U.S. at 595.  Four benchmarks help determine whether a theory or technique qualifies as "scientific knowledge" such that it will assist the trier of fact.  See Daubert, 509 U.S. at 593.  The Court considers: (1) whether the theory can be or has been tested; (2) whether the theory or technique has been subjected to peer review and/or publication; (3) the rate of error; and (4) whether the theory or technique has been generally accepted within the putative expert's respective community.  Id. at 593-94.  The Third Circuit adds other factors, including: (5) the existence and maintenance of standards controlling the technique's operation;

---

[3] Daubert also applies to expert testimony relating to "technical or other specialized knowledge."  See Oddi v. Ford Motor Corp., 234 F.3d 136, 146 (3d Cir. 2000) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

(6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Paoli II, 35 F.3d at 742 n. 8. When considering these factors, the Court's inquiry must be a "flexible one." Id.

As for the third prong, Rule 702 requires that the "proffered expert testimony must 'fit' within the facts of the case." Yarchak, at 208 F. Supp. 2d at 496. The fit requirement mandates that the testimony "in fact assist the jury, by providing it with relevant information, necessary for a reasoned decision of the case." Id. (citing Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 595 (D.N.J. 2002)). Thus, even if an expert is qualified and relies on sound methodology, he must still "apply this expertise to the matter at hand." See Calhoun, 350 F.3d at 324.

These factors are not exclusive. They "are intended to serve only as 'useful guideposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted.'" Yarchak, 208 F. Supp. 2d at 495 (quoting Heller v. Shaw Industries, Inc., 167 F.3d 146, 152 (3d Cir. 1999)). With the help of these guideposts, the Court performs its essential gatekeeper role under Federal Rules of Evidence 702.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") Daubert, 509 U.S. at 596; see also Fed.R.Evid. 702 advisory committee note (2000) ("the rejection of expert testimony [on the basis of unreliability] is the exception rather than the rule").

### III. Analysis

Defendant does not dispute that Mr. Stephens is qualified to testify as an expert

in this case. At issue are whether Mr. Stephens' opinions are supported by his references, facts in the record, or reliable methodology. Defendant identifies specific attacks to several opinions contained in the Stephens Report. The Court will address each challenge.

### 1. Opinions Challenged on Methodology and Facts

Defendant challenges a number of Stephens' opinions on the ground that they identify Hitachi as the manufacturer of the wet kit, without any support for the identification of Hitachi.[4] In addition, Defendant claims that Stephens' methodology is unreliable because he himself did not install a wet kit to test his theory that moving two clamps would reduce or eliminate the bow in the hose. In addition to the lack of testing, Defendant claims that Stephens did not take any measurements of a properly installed wet kit or do any surveys of Hitachi wet kits. For all of these reasons, Defendant claims that Stephens' opinions are baseless and do not pass muster under Daubert.

The text of the opinions at issue are as follows:

"The hydraulic tubing on each end of the wet kit's hoses had been installed too close to the curve in the boom, improper installation. The proper installation caused the observed upward bow in the hoses and created the clearance problem." Stephens Report, Ex. C, 12.

"The wet kit related tubing could have been installed with the clamps located adjacent to the tubing/hose connections as illustrated, but it was not. So properly installed, the hoses (#108 on the catalog illustration) would have had the near flat orientation versus the excavator's boom and as depicted in the catalog and the hoses would not have extended well above the height of the boom as they did." Id.

---

[4] This is problematic for Defendant because it installs and services Hitachi machinery and accessories. If the wet kit is identified as Hitachi, it would likely implicate Defendant as the installer.

> "The improper installation also created marginal or improper hose bend radiuses in the arm/boom hoses...." Id. at 10.

The Court finds that Stephens' opinions are sufficiently reliable to withstand a Daubert challenge. First, Defendant's claim that Stephens' opinions are unreliable and "curious" because there is a question as to whether Hitachi manufactured the wet kit misconstrues Stephens' Report. Stephens does not state anywhere in his report that it was Hitachi which manufactured or installed the wet kit and he states that "Hitachi personnel could not have installed the wet kit." Stephens Rep., Ex. C at 10. Stephens is permitted to make comparisons to Hitachi, because that is Plaintiff's theory of the case. In addition, there is evidence in the record upon which Stephens can rely on to justify his use of the Hitachi parts catalogue and schematic in making his comparisons as to the improper installation. Specifically, Robert H. Hahn, Jr., Winzinger's shop foreman and head mechanic of more than fifteen years testified that Hitachi manufactured the subject wet-kit. Hahn Dep., Ex. E, 64:03-14. Robert Winzinger, the founder of the company also identified the subject wet-kit as Hitachi. Winzinger Dep., Ex. C, 117:23-08-13, 118:23-118:01, 118:13-119:15. Based on this testimony, Stephens may assume that Hitachi is the manufacturer in making his logistical formulations.

Stephens' testimony regarding Hitachi is permissible because it is predicated upon an assumption that Hitachi manufactured the wet kit, consistent with the testimony of two Winzinger representatives. The Court need not weigh the correctness of Stephens' conclusion, only that it flow from the facts and considerations and is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." United States v. Schiff, 602 F.3d 152, 173 (3d Cir. 2010) (quoting United States

v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985) (internal quotations omitted)).

However, to the extent that Stephens may try to opine that it is his expert opinion that Hitachi did indeed manufacture the wet kit, such testimony is improper.[5] Defendant's challenge really goes to the weight of Stephens' opinions, which may be undermined by demonstrating that Hitachi is not the manufacturer. Such as attack is for cross examination and does not render Stephens' testimony unreliable. In this regard, Stephens' comparison to Hitachi is permissible.

In addition, Stephens' methodology is sufficiently reliable. Stephens Rep., Ex. A, p. 6. Stephens visually inspected the subject excavator and compared the installation against the Hitachi Technical Manual and Operator's Manual. Id. at 2-4, 6, 11-12. He took measurements and identified why he believes the after-market installation by Elliot and Frantz, assuming it did the installing, deviated from the original equipment. Id. at 4, 11-12. Stephens reviewed all of the testimony available in the case and all of the discovery. Id. at 2-3. He took measurements and photographs of the excavator and the auxiliary hydraulic system at issue. Id. at 4, 13-18. He reviewed Hitachi's Technical Manual and Operator's Manual both of which describe the original manufactured height and width measurements necessary for safe transport. Id. at 2-4. Mr. Stephens also observed the wet kit installation schematic from Hitachi's Parts Catalog which illustrated the proper method for installing the after-market wet kit as being along the boom arm following the original hydraulic piping lines. Id. Thus, Stephens drew

---

[5] On this point, Plaintiff agrees that Stephens cannot definitively identify the product as Hitachi, but may rely on the testimony in the record to support his use of the Hitachi schematic comparisons.

conclusion directly from the comparison of the hoses at the time of inspection and the original hose lines.

The fact that Stephens did not do any testing does not render his opinion unreliable in this case. Stephens' visual inspection of the excavator, which still had the original hydraulic piping lines on it provides a sufficient methodology and distinguishes the facts of this case from those in Milanowicz v. The Raymond Corp., 148 F. Supp. 2d 525, 530-31 (D.N.J. 2001). Relied on by Defendant, Milanowicz was a design defect case in which Stephens' proposed alternative design was precluded for lack of reliability. In that case, the court's concern focused on Stephens' failure to test the performance of his proposed design with that of the original, his failure to use any diagrams or illustrations to support his opinion, and the lack of historical context for his contentions. Milanowicz, 148 F. Supp. 2d at 539. Specifically, the court stated that Stephens "provided no evidence of the availability or extent of use of his proposed alternative design, let alone identify a single model or manufacturer." Id. at 540.

Here, Stephens explained why testing or self installation was not required: he made comparisons of the original lines still on the excavator with the after market installed hoses. Stephens Report, Ex. A, 6. The irregularity of the installation was bolstered by Elliott and Frantz's mechanic, Scott Szyplowski, who stated that the installation was sloppy. Szyplowski Dep., Ex. G, 35:5-18, 33:6, 34:20. In addition, Stephens referenced the illustrations of the Hitachi schematics and drew from the Hitachi parts catalogue. Thus, unlike in the Milanowicz case, the visual inspection coupled with the comparison to the Hitachi schematics and parts catalogue is a sufficiently reliable methodology in this case. To the extent that a better methodology,

such as actual installation was available, that argument is better suited for cross examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596; see also Fed.R.Evid. 702 advisory committee note (2000) ("the rejection of expert testimony [on the basis of unreliability] is the exception rather than the rule").

The Court, exercising its "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," finds that Stephens' methodology as applied in this case is reliable. Kumho Tire, 526 U.S. at 152, 119 S.Ct. at 1176; Viking Yacht Co. v. Composites One LLC, 613 F.Supp.2d 626, 634 (D.N.J. 2009). Stephens' personal knowledge combined with his first hand visual inspection and comparisons to manufacturer schematics and parts is a sufficient methodology from which Stephens can opine as to whether the manner in which the subject wet kit was installed was defective. Betterbox Commc'ns Ltd., 300 F.3d at 329 ("[T]he relevant reliability concerns may focus upon personal knowledge or experience.") (quoting Kumho Tire, 526 U.S. at 150, 119 S.Ct. 1167) (internal quotations omitted)).

### 2. Opinions on Proximate Cause and Plaintiff's Motivation

Defendant contends that Stephens cannot opine on issues that are beyond the scope of his ken. Specifically, Defendant takes issue with the following opinions:

> "If the wet kit's hoses did not extend well above the boom in the manner that they did, Mr. Worrell would have not been motivated to climb the boom and the incident would not have occurred. Stephens' Report, Ex. A, at 11, 12.

>The excavator's manufacturing defect was a proximate cause of Mr. Worrell's incident. Id.

Plaintiff agrees that Mr. Stephens cannot opine as to what motivated Mr. Worrell's actions on the day of the accident. Plaintiff contends that Stephens was only restating Mr. Worrell's testimony as to why he, Worrell, was motivated to climb the excavator that day.[6] In addition, Plaintiff agreed that Mr. Stephens cannot opine on proximate cause and should not lend his "expert" opinion to that issue. During oral argument, Defendant accepted Plaintiff's explanation and consistent with that discussion, Mr. Stephens will not render an expert opinion on proximate cause or motivation. He may only opine as to the circumstances at play which were considered by Mr. Worrell.

### 3. Net Opinions

Defendant challenges two Stephens' opinions on the grounds that the opinions lack support in the record and/or are impermissible net opinions. A net opinion is not a specific factor under Daubert, nor can it be found as a specific rule in the Federal Rules of Evidence. See Holman Enter. v. Fidelity & Guar. Ins. Co., 563 F.Supp.2d 467, 472 n. 12 (D.N.J. 2008). Essentially, it's a longstanding rule that dictates exclusion of expert testimony that contains "bare conclusions, unsupported by factual evidence." Id. (citing Buckelew v. Grossbard, 435 A.2d 1150, 1156 (N.J. 1981)). Expert opinion testimony aids the trier-of-fact in making factual determinations and must be predicated upon

---

[6] Stephens' Report states Worrell's motivation in two different sections: once under the heading of "Commentary," and the other under the heading "Opinion." Stephens Report, Ex. A at 11, 12. In neither circumstance does Stephens' attribute the statements to Mr. Worrell. Defendant's argument has force; the opinions on motivation appear to be offered and justified by Stephens.

evidence, not speculation. See State v. Kelly, 478 A.2d 364, 379 (N.J. 1984). "Such an opinion . . . [is] of no assistance to the trier of fact" and may be insufficient to establish causation. Tannock v. New Jersey Bell, 537 A.2d 1307, 1309, (N.J. Super. Ct. App. Div. 1988). Therefore, an expert opinion based upon speculation, possibilities or contingencies is inadmissible. See Buckelew, 435 A.2d at 1150.

The two opinions at issue are as follows:

> The wet kit installation that created a machine transport problem was defective. Id. at 12.

> Elliot and Frantz, Inc.'s personnel had to have installed the wet kit, an action that was consistent with the typical and expected construction machinery industry practice and the testimony of Mr. Winzinger and Mr. Hahn. Id. at 12.

Defendant claims that there is no support in the record for Stephens' contention that the installation caused a transportation problem and that Stephens fails to consider other methods of fixing the "problem," such as taking an alternative route or getting a permit. Stephens has over 25 years of experience in the transportation industry, is aware of and cited to statutory minimum bridge/ overpass heights, and also considered Mr. Worrell's testimony that he had a prior incident where the hoses on his haul rubbed an overpass. Stephens' Report, Ex. A, 2-4, 10-12. Given that he took the measurements of the subject equipment, Stephens is qualified to render an opinion that the hoses presented a transportation problem and were, as a result, defective. Defendant may challenge Stephens' opinion on cross examination with the "other options" Stephens could have considered. Such an attack goes to the weight of Stephens' opinion, not the admissibility of the opinion.

As to the second opinion, Defendant claims that there is no basis for this

testimony and that it impermissibly makes credibility determinations.  The Court agrees in part.  There is evidence in the record that Elliott and Frantz installed Hitachi wet kits for Winzinger. Hahn Dep., Ex. E, 62-64, 68.  Hahn, the head mechanic at Winzinger, states that no one at Winzinger has the ability to install a wet kit and that the characteristics of the subject wet kit are, in his experience, consistent with Hitachi.  Id. at 62-64.  Hahn continues that Defendant is the local dealer for Hitachi and it is likely that the wet kit came from Defendant. Id. at 68  In addition, there is evidence in the record that Winzinger purchased wet kits exclusively from Elliot and Frantz.  Winzinger Dep., Ex. C, 117 ("[W]e always bought our wet kits off of Elliott and Frantz because they were the Hitachi dealer and these are the best wet kits.")   The parties agree that there is, however, no invoice demonstrating that Elliott and Frantz installed this wet kit.  Nonetheless, based on his years of experience in the heavy machinery industry and the testimony of the Winzinger personnel that defines the likelihood that this particular wet kit came from Defendant, Stephens can opine that such a likelihood is, in his experience, consistent with industry practice. See Betterbox Commc'ns Ltd., 300 F.3d at 329 (personal experience can be used to support reliability).  There is no support in the record for Stephens's statement that "Elliot and Frantz, Inc.'s personnel had to have installed the wet kit."  Whether or not Elliott and Frantz installed the subject wet kit is a question of fact for the jury.

     Because there is testimony in the record that defines the historical relationship of Winzinger and Defendant, Stephens' opinions comparing the industry practice and the testimony of the Winzinger personnel is permissible.

## IV. Conclusion

For the reasons stated on the record and those detailed above, Defendant's motion to bifurcate is denied. Defendant's motion to preclude the testimony of Paul Stephens is granted in part. Stephens may not offer opinions on Mr. Worrell's motivation, he may not state with authority that Defendant did in fact install the subject wet kit, and he may not opine on the issue of proximate cause. An appropriate order shall issue.

Dated: April 16, 2013

                                                  s/ Joseph H. Rodriguez
                                                  Hon. Joseph H. Rodriguez,
                                                  United States District Judge